Per Curiam.

It is urged by Lederer that the instant proceeding constitutes a collateral attack upon the order heretofore made by the commission adding Lederer as a shipper to the Crisp permit, and that, since the issues raised here were, or could have been, raised in the prior proceeding the order in such proceeding is res judicata as to this proceeding.
The commission takes the position, however, that, in the absence of specific legislative enactment, the doctrine of res judicata has not been applied to orders of regulatory and licensing agencies in this state, and that, as a regulatory and licensing agency, the commission is given by statute continuing jurisdiction over the utility and motor-transportation industry.
*175 Although our view of this matter makes unnecessary our decision as to the point, it is difficult to see how, with different parties and different issues, the order in the Crisp proceeding can be res judicata as to this proceeding. State, ex rel. Ohio Water Service Co., v. Mahoning Valley Sanitary District, ante, 31.
The. capacity of complainant to institute this proceeding is questioned in the answer of Lederer. However, since that question is not urged upon us in this appeal, we do not find it necessary to decide it.
Only two witnesses appeared at the hearing before the commission. The first merely identified the complainant and its interest. The remainder of the record is made up of the testimony of Lederer’s president, elicited as on cross-examination. From this testimony, the commission made the following findings of fact:
“(1) The respondent Lederer Terminal Warehouse, is a shipper on the contract motor carrier permit of Donald Crisp.
“(2) Insofar as this complaint is concerned, the contract motor carrier permit authority of Donald Crisp is limited to the transportation of grocery commodities and other items sold in supermarkets. The permit is further restricted to state that each shipment transported must have had a prior or subsequent storage or processing in a Lederer Terminal Warehouse Company.
•“ (3) Customers of the Lederer Terminal Warehouse Company store carload quantities of their merchandise with the Lederer Terminal Warehouse Company; as sales are made of smaller quantities the Lederer Terminal Warehouse Company is instructed to ship LTL shipments of such stored goods to various customers of the storing company.
“(4) Under the warehouse contract entered into between Lederer Terminal Warehouse and its customers the warehouse is given full power and authority to arrange for the transportation of such goods in storage, being authorized to designate the carrier, and to attend to all the other matters incident to shipping.
“ (5) At no time is actual legal title to any of these warehoused goods invested in the Lederer Terminal Warehouse Company. It performs this service of arranging for transpor *176 tation facilities by virtue of a delegation power to arrange such service, contained in the warehousing contract.
“ (6) As a part of its total service and as an adjunct to its general warehousing service, Lederer Terminal "Warehouse Company prepays the freight on such shipments and sends a receipted freight bill to its customer; who then reimburses the warehouse. This arrangement is followed whether common or contract carriage is employed. In no event does the Lederer Terminal Warehouse Company bill its customer for transportation charges in excess of those made by the carrier.”
A review of the record indicates that the above findings of fact are fully substantiated by the record. From these findings, the commission, in its original order, concluded as follows:
“The task which this complainant has assigned to itself, under the pleadings it filed, is indeed a difficult one. It has elected to show that the operation in question is in derogation of the best interest of the entire motor transportation industry. It has undertaken to show that the Lederer Terminal Warehouse is actually engaging and rendering services as if it were a common carrier by motor vehicle. It has undertaken to show that the practices of which it complains are hindering the regular qnd irregular route transportation companies in the publication of their own tariff rates. It has undertaken to show that the mere fact that a contract carrier authority exists between Donald Crisp and this respondent constitutes a complete mockery of both common and contract carrier conceptions.
“In the opinion of the commission none of these matters has been sufficiently proved of record to the extent that it would justify the taking of the action requested by this complainant in the prayer of its complaint.”
In its application for rehearing, the complainant contended that it was not required to prove the allegations of its complaint, that such allegations were inserted for the purpose of prompting the commission to assume jurisdiction, and that, once having assumed jurisdiction, the commission had the burden of conducting an investigation and, in effect, proving the allegations.
In its order, made pursuant to this application for rehearing, the commission said:
‘ ‘ The theory which this complainant thus advances appears *177 to do violence to the usually accepted rules of pleading and practice, since it is elementary that any party complainant before this commission assumes the duty and obligation of proving all of the material allegations contained in his original complaint. The commission, therefore, finds these arguments to be not well made, and hereby reaffirms its previous holding that this complainant has failed to sustain its burden of proof.”
"With that conclusion of the commission we are in complete accord. This court said in Pennsylvania Rd. Co. v. Public Utilities Commission, 126 Ohio St., 260, 185 N. E., 49:
“The other question is whether the order granted is sustained by both public convenience and public necessity. The applicant carried the burden on this question, but the burden was upon the plaintiff in error on the question whether the granting of the application will substantially impair the existing rights of the protestant.” (Emphasis added.)
This court likewise held in Wooster Freight Lines, Inc., v. Public Utilities Commission, 163 Ohio St., 11, 125 N. E. (2d), 11, that the burden of proof is on a contract carrier, who seeks permission to add a shipper to his list, to prove a deficiency in existing service, a demand for proffered service and that the filling of such demand will not conflict with the public interest.
In our opinion, the complainant herein has a similar burden of proof concerning the allegations of its complaint.
We can not say, from a review of the record, that the order of the commission that the complainant has not sustained its burden of proof is either unlawful or unreasonable, and the order is, therefore, affirmed.

Order affirmed.

Weygandt, C. J., Zimmerman, Taet, Matthias, Bell and Herbert, JJ., concur.
Péck, J., not participating.