Weygandt, C. J.
 

 The question requiring the consideration of this court is whether the finding and order of the Public Utilities Commission are unlawful or unreasonable either for want of any evidence to support them or because they are against the weight of the evidence.
 

 Under the provisions of Section 614-3, G-eneral Code, the commission is authorized “to promulgate and enforce all orders relating to the protection, welfare and safety of railroad employees and the traveling public.” Acting pursuant to this authority the commission found that the practice of the railroad company in permitting its yardmasters to operate signals “is dangerous and creates an undue and unnecessary hazard to the safety and security of the public and of the employees of said company in that the performance of such work by the yardmasters of said company is not provided for by the operating rules and tends to destroy the efficiency and value of the administrative service of the yardmasters by diverting their attention and employment from the duties and responsibilities of their administrative position.”
 

 Does the record disclose, evidence sufficient to support this finding?
 

 First, the appellant company concedes that its yard
 
 *375
 
 masters operate signals but it contends that the commission was in error in finding that such operation is contrary to the company’s rules. However, the commission did not so find. It found simply that such operation by yardmasters “is not provided for by the operating rules.” This was correct, inasmuch as the record discloses no company rule specifically providing for or prohibiting this practice. The rule upon which the company bases this contention is number 812 which states in general terms that yardmasters “will have charge of their yards, direct the movement of trains and engines therein, and respect the instructions of the station agent relative to the business of the station.” Since the subject of operation of signals is not mentioned, the commission manifestly was not in error in its negative finding that such operation by yardmasters is not provided for by the company’s operating rules.
 

 Second, the company vigorously insists likewise that the evidence is insufficient to support the commission’s finding as to the element of danger in the operation of signals by yardmasters in addition to their supervisory duties.
 

 Counsel for the commission suggest two answers to this contention. They urge that, irrespective of evidence relating to danger, the commission was within its authority in ordering yardmasters to limit their activities to the duties expressly imposed upon them by the company’s operating rules. Reliance is placed upon the decision of this court in the case of
 
 Erie Rd. Co.
 
 v.
 
 Public Utilities Commission,
 
 124 Ohio St., 573, 179 N. E., 924, the syllabus of which reads as follows:
 

 “Where in a proceeding before the Public Utilities Commission the evidence shows that a railroad company has been using the yardmaster of one of its yards for the purpose of supplying the necessary man to full crew certain operations, and that during the time the said yardmaster is so occupied there is no one to per
 
 *376
 
 form the duties of yardmaster, and such commission being of the opinion that this is a double assignment of duties to the yardmaster, a practice which the commission may control under authority of the statute (Section 614-3, General Code), providing for the protection, welfare and safety of railway employees, the commission’s order that the yardmaster’s complete time should be given to his duties as yardmaster and that he should not be required to fill in in order to complete a crew for operation within the yard, and that such railroad company should desist from the practice of permitting the yardmaster to act as a member of the crew of trains operating within the yard during the time when he is performing the duties of yardmaster, is neither unreasonable nor unlawful. ’ ’
 

 Counsel quote also from the opinion that under “the provisions of Section 614-3, the commission had power to order a railroad company to desist from the practice of permitting a yardmaster to act as a member of the crew of trains operating within the yard during the time when he is performing the duties of yardmaster.” Although that case involved the so-called full crew law which is not under consideration in the instant controversy, the decision is not without significance here. However, counsel for the commission insist that the record discloses ample evidence to support the finding as to the element of danger in the operation of signals by yardmasters. As might be expected, the testimony of the four witnesses offered by the complainants is in sharp conflict with that of the five offered by the company. The latter group testified that the practice in question is not only lacking in danger but is definitely advantageous. The former group was equally positive that the operation of signals by a yardmaster necessarily diverts his attention from the highly important administrative and supervisory duties imposed upon him as the one person in complete charge of the entire yard with its numerous tracks and switches. The com
 
 *377
 
 pany argues that the evidence is silent as to any death or accident resulting from the questioned practice. This is correct but not conclusive. It hardly can be contended that someone must be billed or injured before the commission is authorized to find the practice dangerous. An inspector employed by the commission testified that he discussed the matter several times with an assistant superintendent of the company, and it was agreed that such practice would be discontinued; but. nevertheless no change was made. Another witness stated that “about 2000” complaints had .been made by employees and yardmen with reference to the practice.
 

 In view of the conflict in the evidence this court cannot properly hold that the finding and order are erroneous, thereby merely substituting its judgment for that of the commission.
 

 Order affirmed.
 

 Williams, Matthias, Hart and Zimmerman, J-J., concur.
 

 Turner, J., dissents.
 

 Bettman, J., not participating.