GENERAL TELEPHONE CO. OF OHIO, APPELLANT, *v.* PUBLIC
UTILITIES COMMISSION OF OHIO, APPELLEE.

[Cite as General Telephone Co. v. Pub. Util. Comm. (1972),
30 Ohio St. 2d 271.]

(No. 71-712—Decided June 21, 1972.)

Messrs. *Power, Jones & Schneider* and *Mr. John Robert Jones*, for appellant.

Mr. *William J. Brown*, attorney general, and *Mr. Thomas P. Michael*, for appellee Public Utilities Commission.

Messrs. *Steer, Strauss, White & Tobias* and *Mr. Theodore K. High*, for intervener-appellees.

STERN, J. Appellant contends that the commission erred in computing the rate of return to which it is entitled, in that (1) the commission determined the dollar amount of return prior to determining the rate of return,

and (2) that such determination was based on the actual capitalization of the utility rather than the statutory rate base.

This court, in *Cleveland* v. *Pub. Util. Comm.* (1956), 164 Ohio St. 442, set forth six steps which the commission must follow in a rate case of this nature. We are concerned herein with the first three steps, which in substance are as follows:

1. Statutory Rate Base: Determine the dollar amount of a date certain of the reconstruction cost new less existing depreciation of the property of the public utility used and useful in rendering the public utility service for which rates are to be fixed.

2. Rate of Return: Determine what percentage will represent a fair annual rate of return on the property so used and useful in rendering such public utility service, as will thereby represent a yearly reasonable compensation for the service rendered.

3. Dollar Amount of Return: Determine the dollar annual return to which the utility is entitled by applying the rate of return percentage against the dollar amount of the statutory rate base.[1]

To hold that the rate of return must be firmly determined without reference to the dollar amount of return which it will yield, would be to deny the commission the use of meaningful working figures.[2] The commission must, therefore, be permitted to simultaneously determine steps

---

[1]The remaining three steps are: (4) Annual Expenses: Determine the dollar amount of the cost of rendering the public utility service for a particular year. (5) Allowable Gross Revenues: Add the dollar amount of return to the annual expenses. (6) Rates: Fix rates for the service rendered which would have provided the public utility for the particular year with an amount equal to such allowable gross revenues.

[2]As stated by Judge Gibson in his dissenting opinion in *Ohio Fuel Gas Co.* v. *Pub. Util. Comm.* (1963), 174 Ohio St. 585, 601: "as a matter of mathematics the percentage figure representing the rate of return is merely a means of showing the relationship between the reproduction cost new less depreciation value of utility property and the dollar return realized or to be realized thereon."

2 and 3 in its endeavor to arrive at a yearly reasonable compensation for the services rendered.

The commission may not, however, *determine or test* a rate of return or a dollar amount of return by referring to the actual capitalization of the utility involved. As stated in *Cleveland* v. *Pub. Util. Comm.*, *supra*, at 444:

"* * * under the Ohio statutes and the decisions of this court, the percentage return is to be related not to the 'total capitalization' or to the 'net investment' but to the statutory rate base (reconstruction cost new less depreciation) so that *neither the actual capital of or net investment in this public utility nor its actual earnings requirements are really material* in a proceeding of this kind. Any such method of *determining or testing* the dollar amount of return as that which is advanced by appellants would eliminate any need at all for determining the statutory rate base. The reasons advanced in support of such arguments have previously been considered and rejected as unsound by this court. * * *"" See *Lima Telephone & Telegraph Co.* v. *Pub. Util. Comm.* (1918), 98 Ohio St. 110; *Lindsey* v. *Pub. Util. Comm.* (1924), 111 Ohio St. 6; *East Ohio Gas Co.* v. *Pub. Util. Comm.* (1938), 133 Ohio St. 212; *Marietta* v. *Pub. Util. Comm.* (1947), 148 Ohio St. 173; *Cleveland* v. *Pub. Util. Comm.*, *supra* (164 Ohio St. 442); *Ohio Fuel Gas Co.* v. *Pub. Util. Comm.* (1960), 171 Ohio St. 10; *Ohio Edison Co.* v. *Pub. Util. Comm.* (1962), 173 Ohio St. 478; *General Telephone Co.* v. *Pub. Util. Comm.* (1963), 174 Ohio St. 575; and *Kenton* v. *Pub. Util. Comm.* (1965), 3 Ohio St. 2d 71.

Appellant's contention that the commission improperly referred to the actual capitalization of the utility rather than its statutory rate base in determining the rate of return stems from the following language from the order of the commission:

"A rate of return of 6.95% applied to the rate base of $182,508,351 produces an allowed dollar return of $12,684,330. Applicant's witness aforesaid has determined that applicant's annual cost of debt is $5,766,700 and the

annual dividend requirement of preferred stock is $480,731, a total of $6,247,431. Deducting these fixed charges from the allowable return of $12,684,330 leaves an amount of $6,436,899 available for common equity. This represents a rate of return on common equity of 10.37% which is within the limits of the return on average book equity for twelve other General Telephone operating companies (Meyer Exhibit 1, Schedule 7). Based on applicant's 1,920,000 outstanding common shares the earnings per common share will be $3.35. If applicant continues the annual dividend on common stock in effect for many years of $2.50 per share, the payout ratio would be less than 75%. Thus applicant would be able to retain a reasonable amount in the business to provide for contingencies and additional funds for plant investment."

Appellant's uncontested interpretation of the above language is that the commission related the dollar amount of return on common equity to appellant's actual capitalization of $171,346,000[3] rather than the computated statutory rate base.[4] ($182,508,351.) Such a procedure attributes the entire $11,162,351 difference (statutory rate base minus capitalization) to an increase in equity, and does not comply with law of Ohio.

A rate of return cannot be justified by testing it against the actual capitalization, and although it is contended that the use of the statutory rate base, rather than actual capi-

---

[3]Appellant's capitalization was set forth as follows:

| | |
|---|---|
| Common Equity | $ 62,077,000 |
| Preferred Stock | 10,201,000 |
| Mortgage Bonds | 84,068,000 |
| Debentures | 15,000,000 |
| | |
| Total | $171,346,000 |

[4]Appellant contends that the actual return on equity would be only 8.79% rather than 10.37%. Appellant arrives at this figure by subtracting the sum of $99,068,000 of debt and $10,201,450 of preferred stock from the statutory rate base, and dividing the commission's computed amount available for equity ($6,436,899) by the remainder ($73,238,901).

talization, gives a utility an excessive actual return, the remedy for this situation lies in the legislative branch of the government and not in the courts. See *Marietta* v. *Pub. Util. Comm., supra* (148 Ohio St. 173, 183).

Furthermore, the above quoted language from the order of the commission (pertaining only to the rate of return on common equity), is the only portion of the commission's order which provides any substantive indication of the procedure actually used in determining the rate of return or dollar amount of return. The only evidence found in the record pertaining to the rate of return is that provided by appellant, and although the commission is not bound to follow appellant's recommendations, it must show the reasons prompting the decisions arrived at.

The commission contends that the quoted language was intended only to illustrate the effects its determination would have on the actual capital of the utility, and that the remainder of the opinion and order indicates that the procedure set out in *Ohio Edison Co.* v. *Pub. Util. Comm., supra* (173 Ohio St. 478, 489), was properly followed in arriving at the rate of return and the dollar amount of return. As previously pointed out, a rate of return cannot be justified by testing it against the actual capitalization. Further, having examined the entire order, we find no additional satisfactory explanation of the procedure used by the commission.[5]

The commission contends further that its failure to specifically set forth the reasons explaining how it com-

---

[5] The only other statement in the order relating to the procedure used by the commission is that:

"Upon consideration of all the facts of record in this proceeding, including the opinion testimony and exhibits of applicant's rate of return witness, the commission is of the opinion that a rate of return of 6.95% constitutes a fair and reasonable rate of return on the value of applicant's property dedicated to providing telephone services within its operating area. In reaching its determination, the commission has taken into consideration what amount would be reasonably required by applicant to provide for such items as interest on debt, dividends on outstanding stock, and the reservation for surplus."

puted the rate of return is not dispositive, because, no request having been specifically made, the commission could not have *refused* to set forth its reasons. (See paragraph six of the syllabus of *Ohio Edison Co.* v. *Pub. Util. Comm., supra* [173 Ohio St. 478].)

Upon examination of the record, we find that the issues raised by appellant before the commission were sufficient to require the commission to set forth its reasons. Further, R. C. 4903.09 specifically requires that:

"In all contested cases heard by the Public Utilities Commission, a complete record of all of the proceedings shall be made, including a transcript of all testimony and of all exhibits, and the commission shall file, with the records of such cases, findings of fact and written opinions *setting forth the reasons prompting the decisions arrived at,* based upon said findings of fact." (Emphasis added.)

The record being incomplete, no decision as to the reasonableness of the determined rate of return can be made.

We hold, therefore, that where the commission has not set forth in its order its reasons in sufficient detail to enable the Supreme Court, upon appeal, to determine how the commission reached its decision, the order will be set aside.

The order of the Public Utilities Commission is reversed, and the cause is remanded for compliance herewith.

*Order reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, CORRIGAN, LEACH and BROWN, JJ., concur.